UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JUSTINO RAMIREZ | : | PRISONER<br>CIVIL NO. 3:03CV250 (WWE)(HBF) |
| v. | : | |
| JOHN ARMSTRONG, ET AL. | : | JUNE 23, 2005 |

### AFFIDAVIT OF TIMOTHY SILVIS, M.D., IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

I, Timothy Silvis, M.D., being first duly sworn, deposes and says:

1. I am a physician licensed to practice Medicine in the State of Connecticut since 1983.

2. I am Board Certified in Internal Medicine.

3. I was employed part-time at the Osborn Correctional Institution from 1989 to 1995 and part-time at the MacDougall/Walker Correctional Institution ("MWCI") from 1995 to 1997. I have been employed full-time at MWCI since April 1997.

4. The plaintiff returned from Wallens Ridge State Prison in Virginia to MWCI in December of 2000.

5. The plaintiff has complained of chronic constipation continually since the time of his return from Virginia until after he transferred from MWCI to Osborn Correctional Institution on July 1, 2003.

6. After leaving MWCI on July 1, 2003, I no longer saw or treated the plaintiff.

7. On December 5, 2000, I reviewed the plaintiff's medical records from the time period in which he was incarcerated in Virginia. I ordered preparation for a barium enema test and the test itself. I also ordered lab work in an attempt to determine any cause for the claimed constipation.

8.  On January 5, 2001, the plaintiff's colon was filled with stool, indicating the plaintiff had not taken the laxatives as prescribed. As a result, I ordered the plaintiff to be placed in the infirmary to clean out his colon.

9.  After several days in the infirmary, x-rays continued to demonstrate stool in the colon. As a result, I requested a gastrointestinal (G.I.) consultation from the Utilization Review Committee (URC) at UConn Health Center and I ordered Reglan and Bentyl, which are medications for irritable bowel.

10. The URC must approve such consultations and, after their review of the plaintiff's condition, my request was not approved. As a result, I ordered another barium enema test.

11. In February of 2001, plaintiff complained of 4 days of constipation despite being on Reglan. Because of this, I ordered this medication to be taken in front of a Nurse.

12. On March 8, 2001, a barium enema test was conducted and showed that the plaintiff has a normal colon. An upper G.I. was conducted 4 days later and was also normal.

13. The plaintiff continued to complain of constipation following these tests and, as a result, I decided to change his medications to Lactulose instead of Bentyl and I ordered the Reglan to be administered at 1pm to ensure consistency. I entered an order to see him again in 90 days.

14. The plaintiff continued to have constipation despite being given Lactulose, which is not physically possible. The plaintiff claimed he could not tolerate Lactulose, and I changed his medication to Magnesium Citrate and soap suds enemas ordered for 90 days. I also requested another G.I. consult from URC, which was not approved.

15. The plaintiff, in April of 2001, refused to appear some of the time for his soap suds enemas. He also refused to take the Magnesium Citrate because he claimed it changed his stool to liquid.

16. On April 19, 2001, the Nurse Practitioner ordered Sorbitol and continued the order for Reglan. The Magnesium Citrate was also renewed, which allowed the plaintiff to take any of these medications.

17. At the end of May, the plaintiff refused treatment from some of the medical personnel. As a result of some mental health issues, he was placed on suicide watch.

18. On June 20, 2001, I saw the plaintiff and he continued to complain of constipation. The conclusion I reached was that if his problem was medical, it had to be a functional problem. I ordered lab studies, including thyroid and calcium studies, as well as routine studies.

19. In August of 2001, my diagnosis continued to be irritable bowel syndrome. I ordered Metamucil as a further attempt to address this diagnosis.

20. During the entire summer of 2001, the plaintiff was being treated by mental health and receiving mental health medications.

21. In November, the plaintiff requested Dulcolax instead of Magnesium Citrate and I made that change. The other medications were renewed.

22. In April of 2002, I reviewed the plaintiff's history and continued the medications.

23. On May 30, 2002, I discussed the plaintiff's continued complaints of constipation with him. I repeated orders for lab studies and again requested a G.I. consult from URC.

24. The URC ordered a rigid sigmoidoscope, which was performed and revealed a large hemorrhoid, but was otherwise normal.

25. The large hemorrhoid finding indicated that the plaintiff should be continued on Metamucil and a high-fiber diet. No other treatment was indicated and the expectation was that the hemorrhoid would resolve itself.

26. The plaintiff revealed a new symptom in September of 2002; i.e. that he was choking on his food. As a result, another upper G.I. was ordered and conducted. The test result was normal.

27. The URC again denied a G.I. consultation and recommended trying Lactulose again instead of Dulcolax, which was ordered.

28. On January 10, 2003, plaintiff reported that Lactulose is not working and, as a result, I increased the dosage.

29. On January 17, 2003, plaintiff complained of too many bowel movements and, as a result, the Lactulose was reduced.

30. On March 3, 2003, the plaintiff complained again that only "Dulcolax" worked, despite his prior indication that Lactulose worked too well. I ordered another upper and lower G.I. These test results were normal.

31. On April 11, 2003, I removed Lactulose at the plaintiff's request.

32. On April 29, 2003, the URC again denied my request for a G.I. consultation. However, the URC requested a study to quantify the use of Lactulose.

33. On May 16, 2003, the plaintiff was placed in the infirmary and given Lactulose. The study failed to demonstrate the effectiveness of Lactulose.

34. The plaintiff was transferred to Osborn Correctional Institution in early July of 2003, and I did not see him again.

35. I am aware that after his transfer a colonoscopy examination was performed on September 18, 2003, and the results were normal. The colonoscopy was the result of a G.I. clinic specialist's recommendation in August of 2003. Ultimately, the diagnosis made by the specialist is the same as mine, which is Irritable Bowel Syndrome, which is treated with a high-fiber diet and Dulcolax.

36. I am aware that plaintiff has been diagnosed as suffering from a conversion disorder and hypochondriasis by a mental health expert, Dr. Tress.

37. My treatment and care of the plaintiff was, at all times, proper and consistent with community standards of care.

I have read the foregoing Affidavit and it is all true and accurate to the best of my knowledge and belief.

_____
Timothy Silvis, M.D.

Subscribed and sworn to before me this 23rd day of June 2005.

_____
Commissioner of the Superior Court /
Notary Public